UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SEA SALT, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 2:20-cv-00099-JAW |
| | ) |
| TD BANK, N.A., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**COINBASE'S OBJECTION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW**

Defendant Coinbase, Inc. ("Coinbase"), by and through undersigned counsel, hereby submits this objection (the "Objection") to the Plaintiff's Motion for Leave to file Second Amended Complaint [Dkt. No. 78] (the "Motion to Amend").

This Court should deny the Motion to Amend. Amendment of the Plaintiff's First Amended Complaint and Demand for Jury Trial [Dkt. No. 31] (the "First Amended Complaint") would be futile because the proposed Plaintiff's Second Amended Complaint and Demand for Jury trial [Dkt. No. 78-1] (the "Second Amended Complaint") fails to state a claim for which relief can be granted against Coinbase.

**LEGAL STANDARD AND ARGUMENT**

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course or, in all other cases, only with opposing party's written consent or the court's leave. "Reasons for denying leave include undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment." *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009).

1

"Although leave to amend a complaint 'shall be freely given when justice so requires,' a court acts within its discretion to deny leave when the proposed amendment would be futile." *Xtinction v. Comm'r of Maine Dep't of Marine Res.*, No. 1:19-CV-00406-LEW, 2020 WL 3977942, at *1 (D. Me. July 14, 2020).

A proposed amendment is futile if the complaint, as amended, would fail to state a claim upon which relief can be granted. *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). "In reviewing for 'futility,' the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." *Xtinction*, 2020 WL 3977942, at *1 (quoting *Hatch v. Dep't for Children, Youth & Families*, 274 F.3d 12, 19 (1st Cir. 2001)). "In other words, 'if the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend.'" *Plourde v. Redington-Fairview Hosp.*, No. 1:20-CV-00011-JAW, 2020 WL 5440504, at *2 (D. Me. Sept. 10, 2020)(quoting *Boston & Me. Corp. v. Hampton*, 987 F.2d 855, 868 (1st Cir. 1993)).

To state a claim upon which relief can be granted, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level" and must assert more than a "possibility" of relief and instead demonstrate that entitlement to relief is "plausible." *Id.* at 554–57. "Threadbare recitals of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "In considering the sufficiency of a complaint, it is appropriate for the court to review not only a plaintiff's allegations, but also facts gleaned from documents

incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Plourde*, 2020 WL 5440504, at *2 (internal quotation omitted).

Applying this standard to each of the claims and allegations against Coinbase, as amended, the Motion to Amend should be denied as the Second Amended Complaint fails to state a claim for which relief can be granted.

**I.      Count I – "Trustees' Failure to Disclose" As Amended Fails to State a Claim for Which Relief Can be Granted.**

Plaintiff's amended claim for "Trustees' Failure to Disclose" (Count I) repackages the same allegations contained in the First Amended Complaint, but attempts to frame communications between Coinbase and counsel to Sea Salt, LLC ("Sea Salt") as false disclosures under oath actionable under 14 M.R.S. §§ 2701 and 2702. Sea Salt's claim under 14 M.R.S. §§ 2701 and 2702 fails to state a claim for which relief can be granted because (1) Coinbase cannot be liable for the full amount of judgment against Matthew R. Bellerose or Bellerose Investment Group, LLC ("BIG") under 14 M.R.S. § 2701; and (2) Coinbase cannot be liable for additional amounts pursuant to 14 M.R.S. § 2702 as Sea Salt has not alleged facts that give rise to a claim against Coinbase for false disclosure.

In Count I, Plaintiff cites 14 M.R.S. §§ 2701 and 2702, but those sections do not create liability for the full amount of a judgment against Matthew R. Bellerose or BIG. Section 2701 provides:

> If a person resident in the county in which the action is commenced is summoned and neglects to serve a disclosure under oath submitting to examination within the time required therefor, without reasonable excuse, he is liable for all costs afterwards arising in the action, to be paid out of his own goods or estate if judgment is rendered for the plaintiff, unless paid out of the goods or effects in his hands belonging to the principal.

14 M.R.S. § 2701. The Second Amended Complaint alleges that Coinbase is liable for the full amount of judgment against Matthew R. Bellerose or BIG. (Second Am. Compl., ¶ 121.) Under

3

14 M.R.S. § 2701, Coinbase could only be liable for relevant costs arising in the action after the failure to timely disclose, not the full amount of judgment against Matthew R. Bellerose or BIG.

The Second Amended Complaint also fails to state a claim under 14 M.R.S. § 2702. Section 2702 provides:

> Whoever, summoned as trustee, upon his examination willfully and knowingly answers falsely, shall be deemed guilty of perjury, and shall pay to the plaintiff in the action so much of the judgment recovered against the principal defendant as remains unsatisfied, with interest and costs, to be recovered in a civil action.

14 M.R.S. § 2702. As a basis for this claim, Sea Salt alleges that emails from Coinbase in response to the Summons to Trustee dated August 23, 2018 (the "2018 Trustee Summons") contained "false representations." (Second Am. Compl., ¶ 91.) Sea Salt, however, has not alleged that Coinbase made a false statement "upon examination" or under oath as the basis for a claim under 14 M.R.S. § 2702. In fact, the opposite is true—the Second Amended Complaint states that the December 11 Email from Coinbase "did not amount to a disclosure under oath . . . ." (Second Am. Compl., ¶ 88.) As such, the Second Amended Complaint fails to state a claim under 14 M.R.S. § 2702.

Further, since this claim sounds in fraud, it must be pled with particularity under Fed.R.Civ.P. 9. Rule 9(b) requires "specification of the time, place, and content of an alleged false representation[.]" *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996) (citation omitted). "[M]ere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985). But the Second Amended Complaint does not contain sufficient well-pled facts establishing that any information Coinbase provided to Plaintiff (under oath or

otherwise) was false. Even under normal Rule 8 pleading standards, Plaintiff's allegations are too conclusory and bare-bones to state a claim.

More fundamentally, the information Coinbase provided to Plaintiff was true and Plaintiff does not allege any facts to the contrary. Coinbase's December 11, 2018 email (the "December 11 Email") to Plaintiff's counsel states:

> After a reasonable and diligent search, Coinbase has either (1) been unable to identify any Coinbase customers matching the information provided in the Summons to Trustee, or (2) has identified such customers(s) and can confirm that any account held at Coinbase does not (and has never) had any cryptocurrency or dollar-value held in the account.

(Second Am. Compl., ¶ 87) The Second Amended Complaint alleges that "Matthew R. Bellerose (MRB) had a Coinbase account and so did BIG, his sole member LLC that used the same address and contact information as MRB." (Second Am. Compl., ¶ 88) Accepting the allegations in the complaint as true, the statements in the December 11 Email are not false for two reasons. First, the 2018 Trustee Summons identified "Matthew R. Bellerose" not BIG, so the existence of a BIG account is irrelevant. (2018 Trustee Summons, at 1.) As a matter of law, Coinbase had no obligation to identify or freeze any account beyond those specifically identified in the trustee summons. *See Otis v. Springfield Fire & Marine Ins. Co.*, 122 Me. 239, 119 A. 612 (1923) (holding that "[t]he precise and only question to be determined is whether, at the time of service of the process upon it, the trustee had in its hands money or other property due or belonging to the principal defendant absolutely and without any contingency"). Second, Coinbase did not misrepresent whether Matthew Bellerose or BIG had accounts. Coinbase accurately stated that it had been "unable to identify" matching account information *or* account value in any such account. Plaintiff has not pled that Coinbase in fact did identify matching information *and* that any relevant account had value. Plaintiff has been informed repeatedly by

5

Coinbase that it held no value in any account in the name of Matthew R. Bellerose or Matthew Bellerose at the time Plaintiff served its 2018 Trustee Summons; the Second Amended Complaint does not allege otherwise. Plaintiff has not alleged any false statement made by Coinbase.

The information in the email Coinbase sent to Plaintiff's counsel on July 1, 2020 (the "July 1 Email") relating to the Writ of Attachment and Trustee Summons dated April 23, 2020 (the "2020 Trustee Summons") also was accurate and Plaintiff does not allege facts to the contrary. The July 1 Email states:

> We are in receipt of the above referenced Trustee Summons and Asset Freeze ("Asset Freeze") served on or about May 14, 2020. Coinbase has identified accounts that belong to the individuals described in the Asset Freeze, but Coinbase notes that the balance in the accounts is zero or de minimis. On that basis Coinbase will take no further action with respect to this Asset Freeze and will formally close this matter.

(Second Am. Compl., ¶ 94) On July 30, 2020, Coinbase filed Coinbase, Inc.'s Statement in Response to Trustee Summons [Dkt No. 45] ("Coinbase's Response") relating to the account in the name of Bellerose Investment Group ("BIG Account") and the 2020 Trustee Summons. Coinbase's Response stated that the total currency value of the cryptocurrency identified in the BIG Account was $46 on June 8, 2020.[1] (Coinbase's Response, ¶ 3) This is consistent with the statements made to Sea Salt in the July 1 Email. Beyond general categorization of Coinbase's statements as "misrepresentations," Plaintiff has not alleged any facts to support a claim that any statement made by Coinbase was false.

II.  **Count II – "Fraudulent Misrepresentation" As Amended Fails to State a Claim for Which Relief Can be Granted.**

---

[1] June 8, 2020 was the date that Coinbase was able to identify the account.

6

The Second Amended Complaint fails to state a claim for fraudulent misrepresentation because Sea Salt has not pled with particularly any fraudulent statement by Coinbase. Under Maine Law, to establish a claim of fraud, the plaintiff must show:

> (1) that [one party] made a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purpose of inducing [another party] to act in reliance upon it; and (5) [the other party] justifiably relied upon the representation as true and acted upon it to [its] damage.

*Flaherty v. Muther*, 2011 ME 32, ¶ 45, 17 A.3d 640 (quoting *Me. Eye Care Assocs. P.A. v. Gorman*, 2008 ME 36, ¶ 12, 942 A.2d 707). The heightened Rule 9(b) pleading standard applies and it requires that a plaintiff plead "the who, what, where, and when of the allegedly false or fraudulent misrepresentation." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004).

Plaintiff has not alleged any false statements made by Coinbase. As discussed above, the information included in the December 11 Email, the July 1 Email, and the Coinbase Response were accurate. Plaintiff has not identified any statements Coinbase made that was false. The Second Amended Complaint merely states the conclusion that "Coinbase's false representations over email in response to the trustee summons caused Plaintiff to erroneously believe that MRB did not use Defendant's cryptocurrency for any of his money laundering." (Second Am. Compl., ¶ 91.)

Nor has Plaintiff pled the remaining elements of fraudulent misrepresentation with particularity. The Second Amended Complaint makes general statements with respect to reliance and damages caused by the alleged misrepresentations (Second Am. Compl., ¶¶ 123–128.) These allegations likewise fail to meet the standard of Rule 9(b).

## III. Count III – "Unjust Enrichment" As Amended Fails to State a Claim for Which Relief Can be Granted.

Plaintiff's unjust enrichment claim is based on the retention of trading fees that Coinbase earned on transactions from the account in the name of Matthew Bellerose (the "MB Account") and the BIG Account.[2] (Second Am. Compl., ¶¶ 130–131.) There is nothing inequitable or unjust in allowing Coinbase to retain any hypothetical trading fees that it earned. There is no merit to this claim.

To establish a claim for unjust enrichment, three elements must be proven:

1. A benefit conferred upon the defendant by the plaintiff;
2. An appreciation or knowledge by the defendant of the benefit; and
3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

*Estate of White*, 521 A.2d 1180, 1183 (Me. 1987). "Recovery under the doctrine of unjust enrichment is measured by the value of the benefits that the plaintiff proves are actually received and retained by the defendant . . . ." *Platz Assocs. v. Finley*, 2009 ME 55, ¶ 27, 973 A.2d 743 (quoting *A.F.A.B., Inc. v. Town of Old Orchard Beach,* 639 A.2d 103, 106 (Me.1994)).

Plaintiff's claim fails at the first element: Plaintiff did not confer any benefit on Coinbase because any hypothetical trading fee earned by Coinbase was not paid by Plaintiff. Moreover, Plaintiff's claim fails as to the third element: the only benefit Coinbase may hypothetically have received was the standard trading fee that it charges to all customers as consideration for its services. When a defendant has given adequate consideration for the benefit conferred, a claim for unjust enrichment fails. *Maine Eye Care Assocs. P.A. v. Gorman*, 2008 ME 36, ¶ 18, 942 A.2d 707 ("Because the court cannot find that a defendant was unjustly enriched without first

---

[2] There can be no plausible allegation or inference that trading fees were ever collected on the MB Account as there have never been any transactions in that account.

finding that something of value has been taken or retained without adequate compensation, [plaintiff's] claim as to unjust enrichment also fails.") Under the circumstances, there is nothing unjust about Coinbase retaining the trading fees for the services it has rendered to its customers.

**IV.     Count V – "Conversion" As Amended Fails to State a Claim for Which Relief Can be Granted.**

Plaintiff asserts a conversion claim on the theory that Coinbase has profited "from the money laundering alleged in this case as well as the Bellerose Litigation in the form of bank or transaction/processing fees." (Second Am. Compl., ¶ 150.)  Sea Salt claims that "Demand for payment has been presented to Defendants TD Bank, PayPal, and Coinbase now that each Defendant has knowledge of the fraudulent scheme alleged here, yet they have failed to return cash and assets rightfully belonging to Sea Salt." (Second Am. Compl., ¶ 151.)  These conclusory allegations, and the other allegations in the Second Amended Complaint, are insufficient to plead a claim for conversion.

To state a claim for conversion, a plaintiff must show the following:

> (1) that the person claiming that his property was converted has a property interest in the property; (2) that he had the right to possession at the time of the alleged conversion; and (3) that the party with the right to possession made a demand for its return that was denied by the holder.

*York Marine, Inc. v. M/V Intrepid*, No. 2:15-CV-00184-JDL, 2016 WL 5372762, at *6 (D. Me. Sept. 26, 2016).  "The gist of conversion is the invasion of a party's possession or right to possession at the time of the alleged conversion." *Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798.

Plaintiff's conversion claim fails on each of the elements.  First, Plaintiff has not alleged, and does not have, a property interest in trading fees Coinbase has earned for services provided to its customers.  Second, the Second Amended Complaint does not contain sufficient allegations

that Plaintiff had the right to possess any property held by Coinbase.[3]  Lastly, Plaintiff does not provide any facts to supporting its allegation that a demand was made on Coinbase to return property, such as when or in what manner the demand was, or how Coinbase responded. Plaintiff has not stated a claim for conversion.

Plaintiff's conversion claim is also meritless because a claim for conversion is not a remedy for failure to pay a debt.  *See Withers*, 1998 ME 164, ¶¶ 6–8, 714 A.2d 798; Restatement (Second) of Torts § 222A (1965).  Coinbase does not become liable for "conversion" simply because a person who allegedly owes a debt to Plaintiff opens and funds a Coinbase account. *See Gossels v. Fleet Nat. Bank*, 453 Mass. 366, 372 (2009) ("Conversion occurs only when a defendant exercises wrongful control over specific personal property, not a debt; therefore, bank accounts cannot be the subject of conversion."); *Bowden v. Agnew*, 2 N.E.3d 743, 751 (Ind. Ct. App. 2014) ("wrongful failure to distribute net revenue in accordance with the 50/50 agreement constitutes a failure to pay a debt[,]" not conversion because the money was not "a separate, specifically identifiable chattel"); *McNamara v. Picken*, 950 F. Supp. 2d 193, 195 (D.D.C. 2013) ("it is well established that '[a] cause of action for conversion . . . may not be maintained to enforce a mere obligation to pay money.'").  Under Plaintiff's theory, every financial institution in America—including Coinbase—with accounts opened by debtors would be liable for "conversion" whenever a debtor fails to pay.  That is plainly not the law.

---

[3] Even if Sea Salt intended to allege that Coinbase denied turnover of property in the BIG Account held by Coinbase as trustee, that is baseless.  By virtue of its trustee summons Sea Salt at most has the right to have relevant assets frozen pursuant to a trustee summons; it has no right at any time to the immediate delivery of any assets held by Coinbase.  In addition, Coinbase tendered the full value of the assets held in the BIG Account on the date of the 2020 Trustee Summons, but Sea Salt has rejected that payment.

10

## CONCLUSION

WHEREFORE, Plaintiff's proposed Second Amended Complaint fails to state a claim upon which relief can be granted and would be futile. Plaintiff's Motion to Amend should be denied.

Dated at Portland, Maine, this 15th day of October 2020.

/s/ Sigmund D. Schutz
Sigmund D. Schutz, Esq.
Bodie B. Colwell, Esq.
Counsel for Coinbase, Inc.

Preti Flaherty, LLP
One City Center
PO Box 9546
Portland, ME 04112-9546
(207) 791-3000
sschutz@preti.com
bcolwell@preti.com