**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **SEA SALT, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **PAYPAL, INC.,** ) | |
| ) | |
| **COINBASE, INC.,** ) | **Case No. 2:20-cv-00099-JAW** |
| ) | |
| **BELLEROSE INVESTMENT** ) | |
| **GROUP, LLC,** ) | |
| ) | |
| **CORY POULIN,** ) | |
| ) | |
| **PLATINUM PAWN & LOAN,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **CONSTANCE BELLEROSE,** ) | |
| ) | |
| **Defendants** ) | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiff Sea Salt, LLC, by and through undersigned counsel, hereby brings this Second Amended Complaint against Defendants, alleging as follows:

**INTRODUCTION**

1.     This case alleges newly discovered facts related to a criminal conspiracy to embezzle more than $1.5 million in profits and stolen lobster from Sea Salt, LLC ("Sea Salt"). The underlying criminal conspiracy is detailed in an embezzlement case already filed in this Court, captioned *Sea Salt, LLC v. Matthew R. Bellerose, et al.*, Case No. 2:18-cv-00413. The defendants in that case (hereinafter referred to as the "2018 Bellerose litigation") include Matthew R.

1

Bellerose ("MRB") his corporate entity, East End Transport, LLC (East End), and his wife Amanda F. Bellerose.

2.      This action, hereinafter referred to as the "2020 litigation," alleges claims against new parties who are not defendants in the 2018 Bellerose litigation. The claims could not have been brought in the 2018 Bellerose litigation because the facts underlying them were not known until late December of 2019.[1] The claims advanced in this 2020 litigation include the following:

A.      Claims against **PayPal, Inc.** and **Coinbase, Inc.** for violation of Maine's Trustee Process Law, 14 M.R.S. § 2601 *et seq.*, for failure to disclose assets and accounts belonging to Matthew R. Bellerose and/or East End Transport, LLC.

---

[1] As a result, the doctrines of collateral estoppel and res judicata do not bar this 2020 litigation. Under Maine law, res judicata "prevents the relitigation of matters already decided." *Portland Water Dist. v. Town of Standish*, 2008 ME 23, ¶¶ 7-9, 940 A.2d 1097, 1099-1100. The parties cannot "again come forward in the same legal mission against the same parties to secure a remedy" that was previously denied. *Id.* (citing *Harriman v. Border Trust Co.*, 2004 ME 28, ¶ 5, 842 A.2d 1266, 1267; *Macomber v. MacQuinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131, 138-39). Res judicata can take two different forms, issue preclusion and claim preclusion. *Id.* Claim preclusion will bar relitigation if: "(1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action." *Id.* (citing *Macomber*, 2003 ME 121, ¶ 22, 834 A.2d at 139). Here, none of the prongs of claim preclusion are applicable. First, Sea Salt is suing new parties who were not defendants in the Bellerose litigation. Second, a valid final judgment has not issued in that litigation against any party with regard to liability (as opposed to East End Transport, LLC's default judgment). Finally, the matters presented for decision in this 2020 litigation were not, and could not have been, litigated in the 2018 Bellerose Litigation. Issue preclusion, also called collateral estoppel, will bar the relitigation "of factual issues already decided if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." *Id.* Here again, issue preclusion does not bar the instant action because no factual issues have been determined by a prior final judgment that has any bearing on the issues advanced.

B.     Claims of fraudulent transfer, conversion, and civil RICO against Defendant **Bellerose Investment Group, LLC**, which has laundered, stolen, and/or converted more than $450,000 belonging to Sea Salt.

C.     Claims of fraudulent transfer, conversion, and civil RICO against Defendant **Cory Poulin**, who has laundered, stolen, and/or converted more than $55,000 belonging to Sea Salt.

D.     Claims of fraudulent transfer, conversion, and civil RICO against Defendant **Platinum Pawn & Loan**, the pawn shop owned and operated by Defendant Cory Poulin, which has laundered, stolen, and/or converted more than $55,000 belonging to Sea Salt.

E.     Claims of fraudulent transfer, conversion, and civil RICO against Defendant **Constance Bellerose**, who has laundered, stolen, and/or converted more than $7,000 belonging to Sea Salt.

## THE PARTIES

3.     Plaintiff Sea Salt, LLC ("Sea Salt") is a Maine Limited Liability Company engaged in the wholesale lobster distribution business in the City of Saco, County of York, and State of Maine.

4.     Defendant PayPal, Inc. ("PayPal") is an online payment system/solution and a Delaware corporation authorized to do business in the State of Maine.

5.     Defendant Coinbase, Inc. ("Coinbase") is a digital currency exchange and a Delaware corporation authorized to do business in the State of Maine.

6.     Defendant Bellerose Investment Group ("BIG") is an administratively dissolved Maine Limited Liability Company that was at one point duly formed and authorized to do business

in the State of Maine beginning in 2016. Matthew R. Bellerose ("MRB") is the sole member of BIG, which has operated out of Saco and/or Old Orchard Beach, Maine.

7.      Defendant Cory Poulin ("Poulin") is an individual residing in the City of Biddeford, County of York, and State of Maine. Poulin is the licensed pawn broker for Platinum Pawn & Loan located at 292 Main Street in Saco, Maine.

8.      Defendant Platinum Pawn & Loan ("PPL") is an entity listed with the State of Maine Department of Professional and Financial Regulation as a pawnbroker with registration number PNB11498. Upon information and belief, PPL is owned and operated by Cory Poulin and/or Matthew R. Bellerose.

9.      Defendant Constance Bellerose ("CB") is the mother of MRB, a defendant in the 2018 Bellerose litigation. She resides in the City of Biddeford, County of York, and State of Maine.

## JURISDICTION AND VENUE

10.      Venue is proper in this Court because Plaintiff's principal place of business is in York County, and many of the activities described herein occurred in the County of York and State of Maine.

11.      This Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because of the civil RICO claims alleged against Defendants.

12.      This Court has supplemental jurisdiction over the remaining claims advanced in this Complaint pursuant to 28 U.S.C. § 1331.

## FACTS UNDERLYING THE 2018 BELLEROSE LITIGATION

13.      Sea Salt is a lobster wholesale business located in Saco, Maine that employed Matthew R. Bellerose ("MRB"), who later became a partner in the business.

14.      In 2017, Sea Salt discovered that it was showing a substantial loss of product.

15.     As a result, the company retained both a forensic accountant and a controller to investigate the source of inventory loss.

16.     At all relevant times, MRB was the floor manager at Sea Salt and oversaw the order fulfillment and shipping process of lobsters via UPS.

17.     To fulfill orders, MRB would print a UPS label to affix to the box for shipping.  He would then generate a bill of lading for the total amount of lobster shipped to a customer.  MRB would then create an invoice in Sea Salt's accounting software based on the bill of lading, which included both the cost of the product and the shipping charges.

18.     From a bookkeeping perspective, any disparity in the amount of lobster shipped versus the amount of lobster that was actually billed would not be detected as long as the manual bill of lading created by MRB matched the invoice he generated.

19.     If no bill of lading or invoice was produced, then nobody would be the wiser if inventory was disappearing—at least in the short term.

20.     In 2017, MRB purported to bring in a new customer named Mastro's.

21.     While MRB did generate some bills of lading and invoices for lobster he shipped to Mastro's, he only did so for a fraction of the product actually shipped.  As set forth in the Affidavit of David Breau (Sea Salt's controller) in the 2018 Bellerose litigation, there is a tremendous disparity in the amount of product actually shipped to Mastro's during the time period summarized in the Motion for *Ex Parte* Attachment (November 24, 2017 through the end of April 2018) and the amount that was invoiced and paid for. *See* ECF No. 5-2 through ECF No. 5-11 in the 2018 Bellerose litigation (Case No. 2:18-cv-00413-JAW).

22.     In his efforts to uncover the source of this discrepancy, Breau performed a weekly comparison of the legitimate sales and shipping charges to Mastro's, which Bellerose recorded in Sea Salt's Quickbooks program, against UPS shipping records for the same time period.

23.     The UPS records showed the actual weight of product sent to Mastro's customers via UPS, most of which was never invoiced by or paid to Sea Salt in Quickbooks.

24.     Breau was able to discern that Mastro's has been billed and Sea Salt has collected just over $250,000.00 for lobster and shipping between November 2017 and April 2018.

25.     By contrast, Breau's investigation of UPS shipping records showed that MRB shipped nearly $1.5 million in product and shipping charges to Mastro's during the same time period.

26.     According to Breau's calculations, the irrefutable total loss to Sea Salt between November 2017 and the end of April 2018 was $471,620.57.

27.     Averaging that loss over the 22-week period, this amounts to an average weekly loss of $21,437.30.

28.     Applying the average weekly theft amount ($21,437.30) to the time period between 1/1/17 and 11/24/17 when the UPS invoices above are summarized for the Court (total of 47 weeks), it is highly likely that Sea Salt sustained a loss of $21,437.30 x 47 = $1,007.553.10.

29.     The loss was less dramatic once Breau began carefully tracking Sea Salt's inventory.  In the approximately two months from May to the end of June 2018, when MRB was terminated, the loss was only $17,254.00, and $16,640.36 of that amount was due to the fact that MRB was removed from the premises before he prepared the invoice to Mastro's for the final week of his employment.  During this time period, MRB could not get away with stealing inventory without detection.

6

30.     Putting the above numbers together, MRB and East End collectively embezzled at least $1,496,427.67 from Sea Salt.

31.     When Sea Salt confronted MRB with this information, he admitted having stolen from the company.

32.     When his business partners raised these irregularities, MRB stated, "I know how this looks.  This looks really bad." He pleaded with his partners: "Tell me how to resolve it."  See the Highbarger Affidavit in the Bellerose litigation at Ex A, page 11.

33.     MRB offered to pay back the money he fraudulently converted to his and the other Defendants' unlawful use, stating: "I gave you the 65 or whatever and I might have 80 or 90.  Give me a number and I can, I'll have to chip away at it."

34.     When pointedly asked by one of his partners why he did it, MRB acknowledged the wrongdoing by asking: "Does it really matter?"

35.     Shortly thereafter, MRB sent his partners an apologetic text that read: "Guys, I just want to say I'm really sorry.  Not only have I betrayed your trust but years of friendship as well and that alone will haunt me forever… I'd like to resolve this as best as I possibly can with you guys without my innocent family having to suffer for my bad decisions."

36.     In this same text exchange, MRB attempted to explain the embezzlement: "I was just trying to cover the expense of buying my 20% [share of Sea Salt, LLC] as I wouldn't have been able to do it otherwise."

37.     The McKellar Affidavit shows that this fraudulent scheme went back as far as 2015, making the likely amount of loss well over $1.5 million and likely in excess of $2 million.

38.     MRB used an LLC that he set up, called East End Transport, LLC, in furtherance of his fraud.

39.     East End paid all of Sea Salt's invoices to "Mastro's" in furtherance of Defendants' fraudulent scheme to embezzle more than $1.5 million from Sea Salt.

## FACTS DISCOVERED DURING THE 2018 BELLEROSE LITIGATION

40.     In the 2018 Bellerose litigation, Plaintiff obtained an *ex parte* order of attachment and trustee process against Matthew R. Bellerose ("MRB") and East End Transport, LLC ("East End").

41.     The attachment against MRB and East End was based on the affidavits of Sea Salt's three owners (Shawn McEwen, Morey Highbarger, and Michael McKellar), plus its accountant David Breau.

42.     After the York County Superior Court entered an *ex parte* order of attachment, the Bellerose litigation was removed to this Court.

43.     The above affidavits and underlying attachments are publicly available on the docket as ECF No. 5-2 through ECF No. 5-11 in the 2018 Bellerose litigation (Case No. 2:18-cv-00413-JAW).

44.     East End defaulted in the 2018 Bellerose litigation and after a hearing the Court entered a default judgment against East End in the amount of $4.5 million.

45.     During the 2018 Bellerose litigation, it became clear that East End was organized primarily as a front for stealing and shipping lobsters from Sea Salt, some of which were legitimately purchased but most of which were stolen and retaining the proceeds from the sale of stolen lobsters.

46.     MRB and East End laundered money stolen from Sea Salt by mixing the tainted proceeds of theft with the legitimate sale of lobster to a fictitious customer named "Mastro's," which happens to be the first six letters of East End's founder's name.

47.     In the 2018 Bellerose litigation, MRB has invoked his Fifth Amendment rights to avoid self-incrimination, thereby essentially failing to defend the action.

**Defendant Bellerose Investment Group ("BIG")**

48.     In the 2018 Bellerose litigation, Plaintiff subpoenaed PayPal records and learned that MRB had been laundering money from the "East End Transport" account he used to embezzle from Sea Salt, by transferred the funds from East End's PayPal account into another TD Bank account that ends in the numbers 6754.

49.     Upon information and belief, the TD Bank account ending in 6754 was opened under the name "Bellerose Investment Group, LLC." Although Matthew Bellerose was a beneficial owner of this account, as set forth below, it was not attached when Plaintiff served a trustee summons on TD Bank, NA.

50.     Bellerose Investment Group, LLC ("BIG") is connected to the fraud and embezzlement alleged in the 2018 Bellerose litigation because East End Transport, LLC paid the mortgage for an investment property owned by BIG located at 823 Portland Road in Saco, Maine.

51.     BIG is a business entity that has purchased property in Saco, Maine. When established with the Maine Secretary of State, BIG was a single member LLC which had separate legal existence as an enterprise but was considered a disregarded enterprise for tax purposes.

52.     MRB is the sole member of BIG, which exists at least in part to aid and abet the fraud, embezzlement, and criminal conspiracy alleged in the 2018 Bellerose litigation.

53.     Sea Salt served a trustee summons on TD Bank on August 8, 2018.

54.     TD Bank responded to the trustee summons with a disclosure dated August 24, 2018.

55.     TD Bank disclosed that it held assets belonging to the Defendants in the Bellerose litigation amounting to $170,241.05. *See* ECF No. 5-31 in the 2018 Bellerose Litigation.

56.      Only $17,841.05 of the TD Bank funds attached by trustee process remain to satisfy the judgment against East End.

57.     East End's August 2018 statement shows that MRB withdrew $25,028 in cash for himself on 8/9/2018, the day after TD Bank was served with a trustee summons.

58.     TD Bank never disclosed that MRB also held assets in an account under the name BIG. When subpoenaed to produce bank records involving MRB, TD Bank did not produce records related to BIG.

59.     On October 23, 2019, in the 2018 Bellerose litigation, Plaintiff served TD with a subpoena seeking "all documents reflecting transactions for the following account holders . . . Matthew Bellerose."

60.     TD Bank purported to respond to the October 23rd subpoena on or about November 15, 2019, but omitted records for the most critical time frame requested, when MRB's money laundering began. After Plaintiff repeatedly requested that TD Bank respond to the subpoena in good faith by providing records beyond November 2015, TD Bank provided records for the correct date range but omitted records for MRB's other account, BIG.

61.     Upon information and belief, most if not all of the contact information for BIG was the same as the sham LLC "East End Transport" that was involved in the trustee summons and subpoena in the 2018 Bellerose litigation, and MRB was the primary contact and beneficial owner of both accounts.

**Defendant PayPal, Inc. Failed to Respond or Provide an
Accurate Disclosure to the Trustee Summons**

62.     On or about August 28, 2018, Plaintiff served a trustee summons on PayPal, Inc. in the 2018 Bellerose litigation.

63.     PayPal violated Maine's Trustee Process Law by failing to freeze and disclose the account(s) held by Matthew R. Bellerose and/or East End Transport, LLC.

64.     PayPal wrote a letter to Plaintiff's counsel on September 4, 2018 which, upon information and belief, is known within PayPal as a "push back letter." PayPal's "push back letter" was intended to delay the trustee process sought by Plaintiff and obstruct the attachment of PayPal customer bank accounts. Instead of responding to the trustee summons in due course, PayPal put the burden on Plaintiff to provide more information. However, given the extent of activity in MRB's "East End" PayPal account, it should have been very clear to PayPal which account Plaintiff was looking for in response to the trustee summons.

65.     PayPal's business practice of "pushing back" on Plaintiff's trustee summons is especially inequitable because a plaintiff often does not have dates of birth and social security numbers to provide trustees at the time of serving a trustee summons. Under appropriate circumstances set forth by statute and court rule, the Maine Trustee Process Law imposes a fiduciary obligation on potential trustees to answer and disclose assets with a quick turnaround time in order to avoid the dissipation of funds available for attachment once a Defendant is made aware of the litigation.

66.     Nonetheless, Plaintiff responded to PayPal's September 4, 2018 letter to provide more identifying information about MRB.

67.     On September 10, 2018, Plaintiff emailed the individual named in the September 4th letter, "csvagera@paypal.com," and stated as follows: "Mr. Svagera, I am in receipt of your

letter dated September 4th and can provide you with the following information about the individuals involved in this matter: Matthew R. Bellerose: Month/Year of Birth [redacted month and year of birth provided in email], Address: 5 Freedom Road in Scarborough. Please let us know as soon as possible if you find accounts with assets of any of the parties listed on the Summons."

68.     PayPal did not respond to the information provided with a disclosure under oath. Instead, PayPal filed the September 4, 2018 letter with the Court and ignored Plaintiff's September 10, 2018 email. *See* ECF No. 5-30 in the 2018 Bellerose litigation.

69.     PayPal failed to provide a sworn disclosure under oath despite having adequate information to reasonably identify Matthew R. Bellerose and/or East End Transport, LLC.

70.     Upon information and belief, PayPal held assets in the account owned by Matthew R. Bellerose and/or East End Transport, LLC at the time it was served with a trustee summons.

### Defendant Coinbase, Inc. Failed to Respond or Provide an
### Accurate Disclosure to the Trustee Summons

71.     On or about August 28, 2018, Plaintiff served a trustee summons on Coinbase in the 2018 Bellerose litigation.

72.     Coinbase violated Maine's Trustee Process Law by failing to freeze and disclose the account(s) held by Matthew R. Bellerose and/or East End Transport, LLC.

73.     Coinbase did not respond to the trustee summons at all until December 11, 2018, long past the 20-day deadline to respond under M.R. Civ. P. 4B(e).

74.     On December 11, 2018, Coinbase emailed Plaintiff's counsel as follows: "After a reasonable and diligent search, Coinbase has either (1) been unable to identify any Coinbase customers matching the information provided in the Summons to Trustee, or (2) has identified such customer(s) and can confirm that any account held at Coinbase does not (and has never) had any cryptocurrency or dollar-value held in the account."

75.    Coinbase's email to counsel did not amount to a disclosure under oath, and in any event it was false. Matthew R. Bellerose (MRB) had a Coinbase account and so did BIG, his sole member LLC that used the same address and contact information as MRB.

76.    On or about October 29, 2019, Plaintiff served Coinbase with a subpoena in the 2018 Bellerose litigation seeking all documents pertaining to transactions that involved MRB in any way.

77.    Upon information and belief, Coinbase never responded to the subpoena served by Plaintiff on October 29, 2019.

78.    Coinbase's false representations over email in response to the trustee summons caused Plaintiff to erroneously believe that MRB did not use Defendant's cryptocurrency for any of his money laundering.

79.    Contrary to Coinbase's false misrepresentations, MRB used Coinbase to exchange or launder cryptocurrency on several occasions between being served with the trustee summons in August of 2018 and being served with a subsequent trustee summons in the instant litigation on May 14, 2020.

80.    Coinbase failed to respond to the May 14, 2020 trustee summons in this litigation within 20 days of being served.

81.    On July 1, 2020, Coinbase sent an email to Plaintiff's counsel indicating that: "We are in receipt of the above referenced Trustee Summons and Asset Freeze ("Asset Freeze") served on or about May 14, 2020. Coinbase has identified accounts that belong to the individuals described in the Asset Freeze, but Coinbase notes that the balance in the account is zero or de minimis. On that basis, Coinbase will take no further action with respect to this Asset Freeze and will formally close this matter."

82.     On or about July 30, 2020, Coinbase filed a disclosure under oath in the instant case, stating that it held property or assets belonging to Defendant BIG. Coinbase's disclosure included a screen shot of cryptocurrency held by BIG on June 8, 2020, with no explanation for why that date had any relevance to a trustee summons that Plaintiff served on Coinbase on May 14, 2020.

83.     Coinbase aggressively contends that Plaintiff's only remedy against it is to recoup $46 that it alleges was in Defendant BIG's account on June 8, 2020. However, Plaintiff is pursuing several remedies against Coinbase for failing to disclose under the Maine Trustee Process Law.

**Defendants Cory Poulin ("Poulin") and Platinum Pawn & Loan ("PPL")**

84.     On 12/29/17, MRB paid Cory Poulin $50,000 from the East End account for "PP+L," which presumably stands for Poulin's pawn shop, Platinum Pawn & Loan.

85.     Upon information and belief, MRB was involved with Poulin in the pawn shop business because MRB emailed himself information about three separate payroll accounts on 1/31/18. One payroll account was for East End and included social security numbers for the LLC's members. The next payroll account was for Bellerose Investments. Finally, MRB included Cory Poulin's information and Platinum Pawn as one of the payroll accounts he was monitoring.

86.     MRB has a history of working in and profiting from illegal activities in pawn shops, including in 2007 when he was convicted of receiving stolen property in connection with another Maine pawn shop.

87.     On 4/30/18, MRB paid $3,000 from the East End account in a check made out to Platinum Pawn.

88.     On 5/7/18, MRB paid $3,500 from the East End account in a check made out to Platinum Pawn + Jewelry.

89.     Upon information and belief, Poulin and/or PPL had no legitimate business dealings with MRB or East End that would justify the payment of funds belonging to Sea Salt to either Defendant.

90.     From the fraudulent "East End" bank account holding hundreds of thousands of dollars belonging to Sea Salt, MRB paid Poulin and/or PPL more than $56,000 dollars in stolen, tainted, laundered money.

### Defendant Constance Bellerose ("CB")

91.     Defendant Constance Bellerose ("CB") is the mother of MRB, a defendant in the Bellerose litigation.

92.     MRB paid CB a fraudulent salary from the East End payroll account he maintained through ADP.

93.     Upon information and belief, CB did not perform any work for East End or do anything else to draw a legitimate paycheck from the company.

94.     From the fraudulent "East End" bank account holding hundreds of thousands of dollars belonging to Sea Salt, MRB paid CB more than $7,000 dollars in stolen, tainted, laundered money.

### COUNT I –TRUSTEES' FAILURE TO DISCLOSE
### (14 M.R.S. § 2701)
### (PayPal, Inc. and Coinbase, Inc.)

95.     Plaintiff repeats the allegations contained in Paragraphs 1 through 94 as if fully stated herein.

96.     As set forth in detail above, PayPal, Inc. failed to disclose under oath assets belonging to Defendant MRB and/or East End in the 2018 Bellerose Litigation.

97.     Coinbase failed to timely disclose assets held by Defendant BIG in this 2020 litigation.

98.     In this 2020 litigation as well as the 2018 Bellerose litigation, Plaintiff will file a motion seeking to have PayPal, Inc. and Coinbase, Inc. adjudged trustees in the amount of any funds held by either trustee at the time they received a trustee summons from Plaintiff, along with any other remedies authorized by 14 M.R.S. § 2614.

99.     For failing to disclose, PayPal, Inc. and Coinbase, Inc. are liable to Plaintiff under 14 M.R.S. § 2701.

100.    Plaintiff seeks an award of costs against PayPal for failing to disclose in the 2018 Bellerose litigation. Plaintiff is entitled to recoup from PayPal "all costs afterwards arising in" the 2018 Bellerose litigation, from August 28, 2018 to the date costs are awarded by the Court. 14 M.R.S. § 2701.

101.    Plaintiff seeks an award of costs against Coinbase for failing to disclose in the instant 2020 litigation. Plaintiff is entitled to recoup from Coinbase "all costs afterwards arising in" the instant 2020 litigation, from May 14, 2020 to the date costs are awarded by the Court. 14 M.R.S. § 2701.

WHEREFORE, Plaintiff Sea Salt, LLC requests that the Court enter judgment in its favor and against PayPal and Coinbase and award damages under the Trustee Process Law, along with such equitable and injunctive relief, as well as attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

## COUNT II – MAINE UNIFORM FRAUDULENT TRANSFER ACT
### (14 M.R.S. § 3579(2))
### (Defendants BIG, Poulin, PPL, and CB)

102.     Plaintiff repeats the allegations contained in Paragraphs 1 through 101 as if fully stated herein.

103.     Plaintiff is a creditor of MRB, a defendant in the 2018 Bellerose litigation, within the meaning of the Maine Uniform Fraudulent Transfer Act ("UFTA").

104.     MRB, a defendant in the 2018 Bellerose litigation, was a debtor of Sea Salt within the meaning of the UFTA.

105.     MRB transferred to Defendant BIG more than $450,000 in cash, making BIG a transferee within the meaning of 14 M.R.S. § 3579(2).

106.     MRB's transfers to BIG are voidable within the meaning of the UFTA, and the transfers were fraudulent, because they were to an insider, the debtor retained possession and control of the assets, MRB was sued or threatened with suit before the transfers, the transfers represented a substantial amount of MRB's assets, no value or consideration was given for the transfers, and the intent of the transfers was to hide or conceal assets from Sea Salt.

107.     MRB transferred to Defendants Poulin and/or PPL more than $55,000 in cash, making Poulin a transferee within the meaning of 14 M.R.S. § 3579(2).

108.     MRB's transfers to Defendants Poulin and/or PPL are voidable within the meaning of the UFTA, and the transfers were fraudulent, because they were to an insider, the debtor retained possession and control of the assets, MRB was sued or threatened with suit before the transfers, the transfers represented a substantial amount of MRB's assets, no value or consideration was given for the transfers, and the intent of the transfers was to hide or conceal assets from Sea Salt.

109.    MRB transferred to Defendant CB more than $7,000 in cash, making CB a transferee within the meaning of 14 M.R.S. § 3579(2).

110.    MRB's transfers to CB are voidable within the meaning of the UFTA, and the transfers were fraudulent, because they were to an insider, the debtor retained possession and control of the assets, MRB was sued or threatened with suit before the transfer, no value or consideration was given for the transfers, and the intent of the transfers was to hide or conceal assets from Sea Salt.

111.    The transfers to Defendants BIG, Poulin, PPL, and CB were made with the actual intent to hinder, delay or defraud Sea Salt.

WHEREFORE, Plaintiff Sea Salt, LLC seeks all damages to which it is entitled under the Maine Uniform Fraudulent Transfer Act, including a monetary judgment against transferee Defendants BIG, Poulin, PPL, and CB, as well as such other and further relief as this Court deems just and appropriate.

### COUNT III – CONVERSION
**(Defendants BIG, Poulin, PPL, and CB)**

112.    Plaintiff repeats the allegations contained in Paragraphs 1 through 111 as if fully stated herein.

113.    Defendants in the 2018 Bellerose litigation embezzled funds from Sea Salt by stealing a massive amount of live lobster product and shipping it to customers, then retaining the proceeds in an account under the name East End Transport, LLC.

114.    The Bellerose litigation defendants then laundered money stolen from Sea Salt by paying it to Defendants BIG, Poulin, PPL, and CB.

115.    Defendants BIG, Poulin, PPL, and CB had no right to possession of the money or property belonging to Sea Salt, and no right to convert such assets to their own use.

116.    Defendants BIG, Poulin, PPL, and CB converted and misappropriated the property and funds described above for their own use with the specific intent to defraud Sea Salt, which had the right to possession of the property converted, along with the funds from sales of lobster and enormous shipping charges.

117.    Upon information and belief, one or more of the Defendants BIG, Poulin, PPL, and/or CB has knowledge of the Bellerose litigation and Sea Salt's demand for repayment, yet they have failed to return cash and assets rightfully belonging to Sea Salt.

118.    Defendants have engaged in intentionally outrageous conduct, or alternatively consciously disregarded the harm that their conduct would cause Sea Salt, such that malice can be implied, justifying an award of punitive damages.

119.    As a result of Defendants' conversion, Sea Salt has suffered economic loss and other harm, justifying an award of compensatory damages in excess of $1.4 million.

WHEREFORE, Plaintiff Sea Salt, LLC requests that the Court award it damages for conversion against Defendants, punitive damages, attorney's fees, costs and expenses, interest, equitable and injunctive relief, and all other relief afforded to the company by law.

### COUNT IV – CIVIL RICO (VIOLATION OF 18 U.S.C. § 1962(C))
#### (Defendants BIG, Poulin, PPL and CB)

120.    Plaintiff repeats the allegations contained in Paragraphs 1 through 119 as if fully stated herein.

121.    Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3), who participated, directly or indirectly, in the affairs of the criminal enterprise and fraudulent scheme described in the Bellerose litigation, through an ongoing pattern of racketeering activity in violation of 18 U.S.C. § 1962(C) ("RICO").

122.    The enterprise described in the Bellerose litigation, East End Transport, was a separate and distinct entity that participated in the racketeering activity described herein.

123.    The enterprise described in this 2020 litigation, Bellerose Investment Group, LLC, was a separate and distinct legal entity that participated in the racketeering activity described herein.

124.    By and through their acceptance of tainted funds from the criminal enterprise described in the Bellerose litigation, each of the Defendants BIG, Poulin, PPL and CB engaged in at least two predicate acts as part of a pattern of continuous, related instances of criminal behavior that amounted to racketeering activity within the meaning of 18 U.S.C. § 1961.

125.    Each of the Defendants BIG, Poulin, PPL and CB engaged in conduct that meets the definition of wire fraud, money laundering, and/or engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957).

126.    Defendants' racketeering activity involved numerous separate acts and transactions, each constituting a crime within the meaning of RICO, that amounted to at least 2 separate criminal acts that affected multiple parties.

127.    There is a threat of continued criminal activity on the part of the Defendants.

128.    Plaintiff Sea Salt has been injured in both its business affairs and its property.  Sea Salt has suffered actual, extensive harm and damage to its business and economic interests because of the RICO violations set forth herein.

129.    Because of Defendants' RICO violations, Sea Salt is entitled to treble damages plus attorney's fees under 18 U.S.C. § 1964.

130.    RICO § 1964(a) also authorizes the Court to "prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering

any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons."

131.    Based on the above, Plaintiff seeks an "appropriate order" disgorging the profits illegally gained by Defendants, as well as disgorgement or forfeiture of any proceeds of their fraud that has been paid to their attorneys.

WHEREFORE, Plaintiff Sea Salt requests that the Court enter judgment in its favor and against Defendants on its Civil RICO claim, award monetary damages, treble damages, disgorgement of profits, attorney's fees and costs of suit, plus interest, and such other and further relief as this Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff Sea Salt, LLC hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.


Respectfully submitted,


Dated:  March 1, 2021                    */s/ Laura H. White*

_____
Laura H. White, Esq., Bar No. 4025
*Attorney for Plaintiff*
WHITE & QUINLAN, LLC
62 Portland Rd., Suite 21
Kennebunk, ME 04043
(207) 502-7484
lwhite@whiteandquinlan.com

21

## **CERTIFICATE OF SERVICE**

I, Laura H. White, hereby certify that on this 1st day of March, 2021, I filed the foregoing Plaintiff's Second Amended Complaint with the Court's CM/ECF system, which automatically sends notification to all counsel of record.


Dated: March 1, 2021                    */s/ Laura H. White*

                                        _____
                                        Laura H. White
                                        *Attorney for Plaintiff*
                                        WHITE & QUINLAN, LLC
                                        62 Portland Road, Suite 21
                                        Kennebunk, ME 04043
                                        Phone: (207) 502-7484
                                        *lwhite@whiteandquinlan.com*